**LADUE LOCAL LINES, INC., Plaintiff,**

v.

**BI-STATE DEVELOPMENT AGENCY OF the MISSOURI–ILLINOIS METROPOLITAN DISTRICT, Defendant.**

No. 65C 398(2).

United States District Court
E. D. Missouri, E. D.

July 23, 1969.

John H. Lashly, Lashly, Caruthers, Rava, Hyndman & Rutherford, St. Louis, Mo., for plaintiff.

Thomas J. Guilfoil, Guilfoil, Symington & Petzall, St. Louis, Mo., for defendant.

MEMORANDUM

MEREDITH, District Judge.

This matter is before the Court on a motion to dismiss. The suit was originally filed in 1965. A short résumé of the history and background is necessary to place the motion in perspective. The plaintiff, Ladue Local Lines, Inc., filed this complaint on November 22, 1965, alleging that the defendant, Bi-

State Development Agency of the Missouri-Illinois Metropolitan District, is monopolizing or attempting to monopolize interstate trade and commerce in violation of the Sherman Antitrust Act (15 U.S.C. § 1, et seq.) On motion of the plaintiff that primary jurisdiction over the issues involved possibly rested with the Interstate Commerce Commission, the Court entered an order on June 13, 1966, staying proceedings in the matter until further order. The plaintiff, on October 14, 1966, filed a complaint with the Interstate Commerce Commission concerning the defendant's activities which were the basis for the suit in this Court. The Interstate Commerce Commission held, in dismissing the complaint on February 14, 1969, No. MC-C–5313, that it had "practically no jurisdiction" over the allegations complained of by the plaintiff.

The motion to dismiss which is presently before the Court was originally filed on December 14, 1965. Ruling upon this motion was held in abeyance pending the determination by the Interstate Commerce Commission of the complaint filed with it. The motion is now before the Court for its decision. The plaintiff "lodged" an amended complaint with the Court on February 18, 1966, but withdrew it on April 25, 1969, without it having been filed.

The plaintiff's complaint of November 22, 1965, alleges that the plaintiff is a Missouri corporation engaged in the business of private bus transportation in the St. Louis, Missouri, metropolitan area; that its principal activity is the transportation of children to and from school; that the defendant was organized through an interstate compact by the States of Missouri and Illinois and approved by the United States Congress; that one of the functions performed by the defendant is the operation of a public transportation service in the St. Louis metropolitan area in both Missouri and Illinois; that the defendant instituted a $2.00 per week student bus pass in the St. Louis metropolitan area and that this student bus pass rate is unreasonably low and restrains interstate commerce and trade in the bus transportation business.

The Court after deliberation has determined that the defendant is not subject to suit under the antitrust laws and that the motion to dismiss must be granted.

Title 49, U.S.C., section 5, par. (11), provides that any carrier or other corporation "participating in a transaction approved or authorized under the provisions of this section shall be and they are relieved from the operation of the antitrust laws * * * insofar as may be necessary to enable them to carry into effect the transaction so approved * * *." The Interstate Commerce Commission in Bi-State Development Agency—Pur.—Vandalia Bus Line, 93 M.C. 579 (1964), authorized Bi-State to purchase the operating rights and equipment of fifteen companies then engaged in motor bus operations in the St. Louis metropolitan area. The application by Bi-State had been filed under section 5 of Title 49. Bi-State Development Agency—Pur.—Vandalia Bus Line, supra, at 583. In its decisions of February 14, 1969, No. MC-C–5313, the Commission said it recognized that by its approval of Bi-State's application "it was creating a single agency to provide 'passenger transportation facilities' in the Metropolitan District and that it was conferring * * * relief from the operation of the antitrust laws * * *" It is well established that the Commission's approval of an application under 49 U.S.C. § 5 relieves the acquiring carrier from the operation of the antitrust laws. Minneapolis & St. Louis Ry. v. United States, 361 U.S. 173, 80 S.Ct. 229, 4 L.Ed.2d 223 (1959). See also Brotherhood of Locomotive Engineers v. Chicago & North Western Ry., 314 F.2d 424 (8th Cir. 1963) (involving relief from certain provisions of Railway Labor Act).

The only question remaining is whether Bi-State's activities in carrying school children comes within the immunity granted by Congress in 49 U.S.C. § 5,

par. (11). An acquiring carrier is given immunity "insofar as may be necessary to enable them to carry into effect the transaction so approved * * *." 49 U.S.C. § 5, par. (11).

To answer this question, it is helpful to examine the circumstances surrounding the Interstate Commerce Commission's decision and approval of Bi-State's application. The following facts and quotations are found in the Commission's report in Bi-State Development Agency—Pur.—Vandalia Bus Line, supra. The Commission's discussion shows that prior to Bi-State's acquisition, the mass transportation situation in the St. Louis metropolitan area was one of extreme deterioration. It was in a downward spiral. The St. Louis metropolitan area in 1963 contained approximately two hundred twenty-five municipalities and a population in excess of two million people. "St. Louis was experiencing problems * * * resulting from increasing use of automobiles for commutation, inadequacy of existing transit facilities, [and] numerous competing companies rendering wasteful duplicate service * * *" A study was made and a unified transit system was recommended "which would permit the inauguration of area-wide zone fares and unrestricted single-line service between all points involved * * *" Bi-State was selected as the agency best suited for these purposes.

The Commission found that:

"The proposed unified transit system is the first and most important step to be taken in providing long-term improvement of the transportation situation in the St. Louis area. The inauguration of an area-wide zone fare structure with transfer privileges is contemplated along with the establishment of through services, both local and express, in lieu of that provided jointly by different carriers with limited local routes. Also, the transaction has been designed to eliminate uneconomical duplicate services, both in Missouri and Illinois, to improve routing and terminal facilities in downtown St. Louis, to replace the remaining street car operations with bus service, and generally to bring about improvements which are necessary to halt the decline in the use of mass transportation service * * *"

Bi-State, due to the emergency existing in the mass transit situation in the metropolitan area, had commenced operations prior to obtaining the Interstate Commerce Commission's approval of its application. The Commission noted that Bi-State had

"already effected numerous economies through rearrangement of routes, consolidation of facilities, centralization of management, pooling of equipment, and elimination of certain taxes. * * * parallel and duplicate services have been and are being reduced along with vehicle miles and maintenance costs. * * * passengers are benefiting through the elimination of many fare inequities, and establishment of monthly passes and improved and coordinated services."

The Interstate Commerce Commission noted that when jurisdiction existed under 49 U.S.C. § 5, the Commission's jurisdiction extended to the entire transaction, both interstate and intrastate. In fact, the original application filed by Bi-State sought the Commission's approval to purchase only seven companies which were then authorized to operate in interstate commerce. On being advised that the Commission's jurisdiction extended to "all phases of a transaction presented for its approval", Bi-State amended its application to include the other companies which held no interstate authority and operated primarily intrastate. Among these companies were the St. Louis Public Service Company and the St. Louis County Transit.

The Court notes from the plaintiff's complaint that the defendant's conduct which allegedly violates the antitrust law was commenced in the late summer of 1963. The conduct complained of includes reinstating "a $2.00 per week student bus pass, with knowledge that this same student pass plan had to be

abandoned by St. Louis Public [Service] Company, its predecessor, because it was operated at a loss." The plaintiff also complains that Bi-State "has eliminated all charges for change of lines, zone fares, and transfer charges * * *."

The acts complained of are the very acts praised by the Interstate Commerce Commission as examples of how the public would benefit from its granting Bi-State's application. The acts had been undertaken prior to the application's final amendment and prior to the granting of the application by the Commission.

The Interstate Commerce Commission created "a unified mass transit system throughout the Metropolitan District." An effective plan to transport school children, by regular buses and by charter service, was necessary to carry into effect the transaction approved by the Interstate Commerce Commission in the application of Bi-State Development Agency—Pur.—Vandalia Bus Line, supra. Accordingly, the defendant is not subject to suit for violation of the antitrust laws under the exemption provided by Congress in 49 U.S.C. § 5, par. (11). The cause will be dismissed.